UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 2:01 CR 73** |
| | ) | |
| **KEON THOMAS** | ) | **(arising from No. 2:01 CR 73)** |

## OPINION and ORDER

Defendant-Petitioner Keon Thomas, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct the life sentence imposed following his 2012 retrial and 2017 resentencing for the armed robbery of a gun store and the murder of its 73-year-old proprietor. (DE # 1385.) Thomas advances four grounds for relief, each sounding in the ineffective assistance of his trial counsel. The Government opposes the motion and asks that it be denied without a hearing. (DE # 1426.) Because the motion, together with the record in this case, conclusively shows that Thomas is entitled to no relief, the motion will be denied without an evidentiary hearing.[1]

### I. BACKGROUND

#### *A. The offense and the murder of Frank Freund*

The evidence at trial established the following. In early 2000, Thomas and his codefendant, Styles Taylor—both convicted felons—were selling small bags of crack cocaine in Hammond. (Tr. 4:194–197, 6:30–31, 6:248–250.) Dissatisfied with their returns,

[1] Mindful that Thomas drafted his motion without the aid of a lawyer, the court has construed his submission liberally and held it to a less exacting standard than one prepared by counsel. *See Haines v. Kerner*, 404 U.S. 519 (1972). Even read with that generosity, his claims fail.

the two discussed committing a robbery as a means of acquiring more drugs and firearms and increasing their profits. (Tr. 6:252–254.) Thomas obtained a Glock 9-millimeter handgun. (Tr. 7:232–233; Ex. 47B.)

On the morning of March 20, 2000, Thomas arrived at Taylor's house, the two dressed alike in black, and they left in Thomas's beige Cadillac. (Tr. 6:256–261.) Frank Freund, a 73-year-old retired mechanic and railroad detective who had owned Firearms Unlimited since the early 1970s, was working in his store. (Tr. 3:95–99.) Around midday, two independent witnesses saw a yellowish-brown Cadillac parked outside the store, and one saw a man in black rummaging on its passenger side. (Tr. 3:119–122, 3:120–121, 4:63–68.) Shortly thereafter a customer found Freund dead behind his counter, shot twice in the left side of his face and neck from less than three feet away with a Glock 9-millimeter. (Tr. 3:111–113, 8:138–141, 8:87–92, 8:129; Exs. 51A–D.) Fresh tire impressions in the vacant lot beside the store matched the size, model, weight, and wear of the tires on Thomas's Cadillac. (Tr. 3:181–184, 7:198–203, 8:93–119; Ex. 8D.) Fifteen firearms were taken from the store. (Tr. 4:43; Ex. 28A.)

In the days that followed, Thomas told an acquaintance he had "hit a lick" at Firearms Unlimited, a slang term for robbery, and Taylor separately boasted of the killing. (Tr. 4:305–308, 7:149, 7:150–156.) Stolen firearms surfaced in the hands of several individuals, and searches of the defendants' residences yielded a firearm taken in the robbery along with drug-trafficking paraphernalia. (Tr. 3:235–246, 4:87–101; Exs. 31D, 31F.) After learning his home had been searched, Thomas fled to Minneapolis, buried the Glock outside a relative's apartment, retrieved it after a maintenance worker dug it

up, and later sold it to a drug dealer. (Tr. 7:233, 8:19; Ex. 47B.) He later admitted these facts to an ATF agent. (*Id.*)

*B. Procedural history*

Thomas and Taylor were indicted in April 2001. An October 2003 superseding indictment added a felon-in-possession count against Thomas. The indictment charged both defendants with: conspiracy to commit Hobbs Act robbery and Hobbs Act robbery, in violation of 18 U.S.C. § 1951; using a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(c) and (j); and being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

A jury convicted Thomas on all counts in September 2004 and declined to impose the death penalty. The court sentenced both defendants to life imprisonment. The Seventh Circuit ordered a new trial after concluding that the record left open the possibility that an African-American prospective juror had been struck in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). *United States v. Taylor*, 636 F.3d 901 (7th Cir. 2011).

At a May 2012 retrial, a second jury again convicted on all counts, and the court again imposed life sentences. The Seventh Circuit affirmed the convictions but found a procedural sentencing error in the explanation given for rejecting the defendants' mitigation arguments. *United States v. Thomas*, 794 F.3d 705, 711–13 (7th Cir. 2015). In September 2017, the court reimposed life sentences. This motion follows from that judgment.

*C. The Section 2255 motion*

Thomas raises four grounds. Ground One contends that counsel was ineffective for permitting Hobbs Act robbery to serve as the predicate "crime of violence" for his Section 924(c)/(j) conviction, arguing that under *Mathis v. United States*, 579 U.S. 500 (2016), the Hobbs Act is an indivisible statute and the court wrongly treated alternative means of commission, some of them non-violent, as elements. Ground Two contends that the conviction must be vacated because: (1) *United States v. Davis*, 588 U.S. 445 (2019), held that Section 924(c)'s residual clause is unconstitutionally vague; (2) the jury was instructed on that clause; and (3) the rule of lenity should resolve the resulting ambiguity in his favor. Ground Three contends that counsel was ineffective because Court's Instruction No. 43 defined the "crime of violence" elements clause as requiring force "against a person" while omitting force against "property," tracking the narrower force clause of the Sentencing Guidelines. According to Thomas, Hobbs Act robbery does not qualify, so Instruction No. 43 was improper. Ground Four contends that counsel was ineffective for allowing a "multiplicitous" indictment that charged both conspiracy to commit Hobbs Act robbery (Count One) and the substantive crime of robbery (Count Two), in violation of the Double Jeopardy Clause.

The Government, treating each ground as a claim of ineffective assistance, responds that counsel performed reasonably and that none of the underlying legal theories has merit.

## II. LEGAL STANDARDS

### *A. Section 2255*

Section 2255(a) permits a federal prisoner to seek relief where his sentence "was imposed in violation of the Constitution or laws of the United States," where the court lacked jurisdiction, or where the sentence exceeded the maximum authorized by law. Relief is reserved for "extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013).

A hearing is required only where the petitioner "alleges facts that, if proven, would entitle him to relief." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). No hearing is needed "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," or where the petitioner's allegations are "vague, conclusory, or palpably incredible, rather than detailed and specific." *Id.* (citation omitted).

### *B. Ineffective assistance of counsel*

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Thomas must establish both that counsel's performance was deficient and that the deficiency prejudiced him. *Id.* at 687. Each prong is difficult, and together they are formidable, because the court must "presume counsel rendered adequate assistance and made all significant decisions

in the exercise of reasonable professional judgment." *Ebert v. Gaetz*, 610 F.3d 404, 411–12 (7th Cir. 2010) (quoting *Strickland*, 466 U.S. at 690).

On the first prong, the court's scrutiny is "highly deferential," and it indulges a "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Harrington v. Richter*, 562 U.S. 86, 104 (2011). A petitioner cannot prevail merely by showing that counsel "deviated from best practices or most common custom"; performance is deficient only where it "amounted to incompetence under prevailing professional norms." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). Representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017).

These principles apply with particular force where, as here, the claim is that counsel failed to make a motion or an argument. The court defers to counsel who "articulates a strategic reason" for not pressing a point, *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005), and counsel is deficient only where "no reasonable argument can be made that counsel's failure was a legitimate strategic decision," *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024). Counsel "cannot be faulted for eschewing the proverbial kitchen sink and instead focusing on arguments with better odds," *Elion v. United States*, 2025 WL 2714814, at 11 (7th Cir. 2025), and *Strickland* "necessarily permits mistakes." *Id.* Counsel meets the constitutional threshold even when an argument is lost solely because he reached a legally incorrect conclusion, so long as the analysis was not egregious and the errors not appalling. *Id.* That an omitted argument

"has some remote chance of prevailing does not mean that a lawyer is constitutionally deficient for failing to bring it." *Lickers v. United States,* 98 F.4th 847, 857 (7th Cir. 2024). A reasonable decision not to raise an argument, "even if clearly wrong in retrospect, cannot support a claim that counsel's conduct was deficient." *Spiller v. United States*, 855 F.3d 751, 756 (7th Cir. 2017).

On the second prong, Thomas must show "a reasonable probability that counsel's ineffectiveness affected the proceeding's outcome." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect"; the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Harrington*, 562 U.S. at 104, rendering the proceeding "fundamentally unfair or unreliable." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

A claim that fails either prong fails altogether. As the analysis below shows, each of Thomas's grounds fails both.

## III. DISCUSSION

### *A. Grounds One and Two: Hobbs Act*

Thomas argues that Hobbs Act robbery is not a "crime of violence" capable of supporting his Section 924(c) and (j) conviction, either because the statute is indivisible and reaches non-violent conduct, or because *Davis* invalidated the residual clause on which the jury may have relied. Neither argument states a claim for relief.

#### 1. The categorical approach and the divisibility of the Hobbs Act

Section 924(c) punishes the use of a firearm during and in relation to a "crime of violence," defined as a felony that "(A) has as an element the use, attempted use, or

threatened use of physical force against the person or property of another" (the elements clause); or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the residual clause). 18 U.S.C. § 924(c)(3). In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held that the materially similar residual clause of the Armed Career Criminal Act was unconstitutionally vague, and in *Davis* it held the same of Section 924(c)'s residual clause. After *Davis*, an offense qualifies as a crime of violence only if it satisfies the elements clause.

Whether an offense qualifies as a crime of violence is determined by the categorical approach, under which the court "look[s] only to the statutory definitions—*i.e.*, the elements—of a defendant's offenses, and not to the actual facts underlying those convictions." *Bridges v. United States*, 991 F.3d 793, 800 (7th Cir. 2021); *Descamps v. United States*, 570 U.S. 254, 261 (2013); *Taylor v. United States*, 495 U.S. 575, 600 (1990). The conviction qualifies if the statute's elements are the same as, or narrower than, the federal definition. *Descamps*, 570 U.S. at 261. The inquiry asks whether "the least serious acts that would satisfy the statute" fall within that definition. *United States v. Campbell*, 865 F.3d 853, 856 (7th Cir. 2017); *United States v. Montiel-Cortes*, 849 F.3d 221, 225 (5th Cir. 2017). Critically, a defendant who claims the statute sweeps in non-generic conduct must do more than exercise "legal imagination"; he must show "a realistic probability, not a theoretical possibility," that the statute would be applied to such conduct, and at a minimum must "point to a case where courts applied the statute in a nongeneric manner." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Beltran-Aguilar v. Whitaker*,

912 F.3d 420, 422 (7th Cir. 2019); *Castillo*, 811 F.3d at 349. The court must not allow its "legal imagination to roam too freely." *United States v. Jennings*, 860 F.3d 450, 460 (7th Cir. 2017).

Where a statute does not categorically qualify, the court asks whether it is divisible; put another way, the court must determine whether it "comprises multiple, alternative versions of the crime." *Descamps*, 570 U.S. at 262; *Taylor*, 495 U.S. at 599, 602; *Shepard v. United States*, 544 U.S. 13 (2005). If so, the court then applies the modified categorical approach, consulting a limited class of records (the charging instrument, plea, and the like) to identify the version of the offense of conviction. *Id.* That approach is reserved for statutes with "alternative elements, some of which may be crimes of violence and some not." *United States v. McDonald*, 592 F.3d 808, 810 (7th Cir. 2010). Where "all methods of violating the statute qualify," there is no need to consult the charging documents at all. *United States v. Taylor*, 630 F.3d 629, 633 (7th Cir. 2010).

This framework is fatal to Thomas's premise. He insists, citing *Mathis*, that the Hobbs Act defines a single, indivisible crime whose various "means"—robbery, extortion, attempt, and conspiracy—the trial court impermissibly recast as elements. But the Seventh Circuit has squarely held that the Hobbs Act *is* divisible: it "creates two separate crimes," Hobbs Act robbery and Hobbs Act extortion. *United States v. Hatley*, 61 F.4th 536, 538–39 (7th Cir. 2023); *see Mathis*, 579 U.S. 500. Thomas was charged with, the jury was instructed on, and he was convicted of Hobbs Act robbery—not extortion, and not conspiracy. Instruction No. 39 told the jury that robbery means taking property from another against his will by force, violence, or fear of injury to his person or

property, and Instruction No. 48 tied the Section 924(c) charge specifically to "Count 2 of the indictment, the robbery of Frank Freund and the Firearms Unlimited Gun Store." The predicate was the completed substantive robbery, and the only question is whether that offense satisfies the elements clause.

**2. Completed Hobbs Act robbery satisfies the elements clause**

The Seventh Circuit has held that "Hobbs Act robbery is a crime of violence" under the elements clause. *Haynes v. United States*, 936 F.3d 683, 693 (7th Cir. 2019). That court has further reaffirmed that completed Hobbs Act robbery remains a crime of violence even after the Supreme Court's subsequent narrowing of Section 924(c)'s reach. *United States v. Worthen*, 60 F.4th 1066, 1068–70 (7th Cir. 2023). Thomas's predicate offense therefore categorically qualifies, and the trial court would have been entitled to instruct the jury that Hobbs Act robbery is a crime of violence as a matter of law without even submitting the question. *Haynes*, 936 F.3d at 693–94.

Thomas's authorities do not show otherwise. The decisions on which he principally relies hold that conspiracy to commit Hobbs Act robbery does not satisfy the force clause—a proposition that is correct but beside the point, because Thomas's Section 924(c) predicate was the substantive robbery charged in Count Two, not the conspiracy charged in Count One. His remaining citations state only the general contours of the categorical approach. *E.g.*, *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019); *United States v. McNeal*, 818 F.3d 141, 151–52 (4th Cir. 2016); *Leocal v. Ashcroft*, 543 U.S. 1, 7–10 (2004). None of these cases holds that completed Hobbs Act robbery falls outside the elements clause.

The hypothetical that one might commit Hobbs Act robbery by threatening to deface a painting with a marker or to pour paint on a car, thereby placing the victim in fear of injury to property rather than to his person, fares no better, and indeed proves the Government's point. The elements clause of Section 924(c)(3)(A) reaches "physical force against the person or property of another." Conduct that places a victim in fear of injury to his property thus falls comfortably within the elements clause; it does not take the offense outside it. Thus, the Seventh Circuit held in *Bridges* that Hobbs Act robbery does not qualify as a career-offender predicate under the Sentencing Guidelines. The Guidelines definition, "unlike § 924(c)," does not include threats to property. *Bridges*, 991 F.3d at 800. In short, Thomas has identified no case applying the Hobbs Act to conduct outside the elements clause, as *Duenas-Alvarez* requires.

### 3. *Davis* and the residual clause instruction

Thomas next argues that the jury was improperly instructed on the now-invalid residual clause (Instruction No. 43(B). *Davis* renders the residual-clause instruction surplusage, but it does not undo a conviction whose predicate independently qualifies under the elements clause. The Seventh Circuit affirmed exactly such a conviction in *Haynes*, "even though [the] jury was instructed on [the] residual clause," because Hobbs Act robbery is a crime of violence under the elements clause as a matter of law. 936 F.3d at 693–94. Because Hobbs Act robbery would qualify under the elements clause alone, there is no reasonable probability the verdict would have differed had the residual clause never been mentioned.

**4. Counsel was neither deficient nor prejudicial**

Even if Grounds One and Two were viewed through the lens of a claim of ineffective assistance of counsel, they would fail. As to the performance prong of *Strickland*, the sequence of events is dispositive. Thomas was re-tried in 2012. The first decision invalidating any residual clause of this kind did not arrive until *Johnson* in 2015, and *Davis* did not follow until 2019—three and seven years after the re-trial, respectively. Counsel "was not obligated to forecast changes in the law" or "anticipate changes in the law," *Elion*, 2025 WL 2714814, at *5,* and counsel is not ineffective for failing to "foreshadow" *Davis.* Further, a lawyer who declined in 2012 to argue that Hobbs Act robbery is not a crime of violence—an argument that would have failed then and fails now—did not perform deficiently. *See Kimbrough v. United States,* 71 F.4th 468, 471–72 (6th Cir. 2023).

As for *Strickland's* prejudice prong, it is clear in this case that no objection counsel might have lodged—and no instruction the court might have given—would have produced a different outcome. The Hobbs Act robbery categorically qualifies as a crime of violence under the elements clause. *Worthen*, 60 F.4th at 1068–70; *Haynes*, 936 F.3d at 693. The question is a purely legal one, and the answer would be the same no matter what objections or instructions might have occurred during trial.

**5. The rule of lenity does not apply**

Thomas argues for application of the rule of lenity, urging the court to find that any ambiguity about which clause the jury relied upon be resolved in his favor. *See United States v. Santos*, 553 U.S. 507, 514 (2008); *Bifulco v. United States*, 447 U.S. 381, 387,

400 (1980). The rule does not apply here. Lenity is a tool for resolving genuine ambiguity in a statute's reach or its penalties. It is not triggered by a defendant's preference for one of two instructions where the governing law is settled. There is no ambiguity to resolve in this case, because Hobbs Act robbery qualifies as a crime of violence under the elements clause as a matter of law.

*B. Ground Three: Instruction No. 43*

Ground Three faults counsel for not objecting that Instruction No. 43(A) defined the elements clause as requiring "the use, attempted use, or threatened use of physical force against a person," omitting Section 924(c)'s reference to force against "the person or property of another." Thomas argues that the instruction thereby tracked the narrower force clause of the Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(1), under which Hobbs Act robbery does not qualify. Thomas cites to *United States v. Camp*, 903 F.3d 594 (6th Cir. 2018) and *United States v. O'Connor*, 874 F.3d 1147, 1158–59 (10th Cir. 2017).

Thomas's arguments mischaracterizes the relationship between the two force clauses, and in any event, he identifies no prejudice. First, *Camp* and *O'Connor* turn on a feature of the Guidelines clause that has no equivalent in Section 924(c). The Guidelines force clause is limited to force against the person; Section 924(c)'s elements clause is broader, reaching force against the person or property. Thomas's cases thus confirm that Hobbs Act robbery *does* qualify under Section 924(c)'s broader clause.

Second, even assuming the instruction should have included the words "or property," Thomas cannot show prejudice. The omission made the instruction narrower than the statute and therefore more favorable to him, requiring the Government to

prove that the offense involved force against a person. The jury found exactly that—that defendants used force against the person of Frank Freund during and in relation to the Hobbs Act robbery and in a manner resulting in his murder. Had counsel objected, the court would presumably have supplied the complete statutory definition. The narrower instruction Thomas received could only have helped him. *Haynes*, 936 F.3d at 693–94. Accordingly, there is no reasonable probability that an objection would have changed the verdict, and counsel was not ineffective for declining to argue against an omission that, if anything, benefited his client.

*C. Ground Four: Multiplicitous Indictment*

Ground Four contends that Count One (conspiracy to commit Hobbs Act robbery) and Count Two (Hobbs Act robbery) constitute "the same charge" arising from "one robbery," that conspiracy and robbery are merely alternative means of satisfying a single element within Section 1951(a), and that counsel was ineffective for tolerating a multiplicitous indictment in violation of the Double Jeopardy Clause. Thomas distinguishes his case from one in which conspiracy is charged under a separate statute, such as 18 U.S.C. § 371 or 21 U.S.C. § 846, arguing that here both offenses come from a single statute.

This argument is contrary to nearly eighty years of settled law. "A substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes." *United States v. Bayer*, 331 U.S. 532 (1947); *Pinkerton v. United States*, 328 U.S. 640, 643 (1946); *Jeffers v. United States*, 432 U.S. 137 (1977); *United States v. Felix*, 503 U.S. 378 (1992). That is so "even if they are based on the same underlying

incidents," because "the essence of a conspiracy offense is in the agreement or confederation to commit a crime," a wrong distinct from the completed offense. *Bayer*, 331 U.S. at 542. The rule holds "even if the underlying substantive crime requires more than one participant." *Iannelli v. United States*, 420 U.S. 770 (1975). Congress may punish both the agreement and its consummation, and doing so in a single indictment offends nothing in the Fifth Amendment.

Because there was no double jeopardy violation, there was no meritorious objection for counsel to raise, and counsel is not ineffective for declining to advance a meritless objection. Nor could the omission have prejudiced Thomas. *Strickland*, 466 U.S. at 687–94. Thus, even if Thomas's argument were viewed through the lens of ineffective assistance of counsel, the argument would fail.

*D. Hearing and appointed counsel*

Finally, Thomas asks the court to hold an evidentiary hearing and to appoint counsel. Neither is warranted. Each of his grounds presents a purely legal question that the files and records of the case resolve conclusively against him. A hearing would serve no purpose, and the appointment of counsel to pursue claims that fail as a matter of law is unnecessary. Accordingly, both requests are denied.

*E. Certificate of Appealability*

Pursuant to Section 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. A court should issue such a certificate only if the movant has made a substantial showing of the denial of a

constitutional right, such that reasonable jurists would find debatable whether the district court correctly resolved the issues or would conclude that those issues deserve further proceedings. 28 U.S.C. § 2255; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell* , 537 U.S. 322, 337-38 (2003). In light of the foregoing, the court finds that the conditions for the issuance of a certificate of appealability are not present in this case. Therefore, no certificate will issue.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** defendant Keon Thomas's motion under 28 U.S.C. § 2255, including his requests for an evidentiary hearing and for the appointment of counsel. (DE # 1385.) Thomas's motion for issuance of a show cause order is **DENIED** as moot. (DE # 1387.) No certificate of appealability shall issue. The Clerk is **DIRECTED** to enter final judgment closing the corresponding civil action (2:19 CV 422).

**SO ORDERED.**

Date: September 8, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT